UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

RAY MICHAEL MORIN,

          Plaintiff,

                                        Case No. 12-15406
     v.                              HON. TERRENCE G. BERG

UNKNOWN CO ERWAY, et al.,

          Defendants.

_____/

## ORDER OF SUMMARY DISMISSAL

Pending before the Court is Plaintiff Ray Michael Morin's *pro se* civil rights complaint brought pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding without prepayment of the filing fee in this action under 28 U.S.C. § 1915(a)(1). After careful consideration, the Court dismisses Plaintiff's complaint, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because the complaint fails to state a claim upon which relief may be granted as to any defendant.

## I.    FACTUAL BACKGROUND

At the time Plaintiff filed his complaint, he was a Michigan prisoner, confined at the Baraga Correctional Facility in Baraga, Michigan. The claims in the complaint, however, concern events that occurred when Plaintiff was incarcerated at the Saginaw Correctional Facility ("SCF"). Plaintiff names the following thirty-one defendants:

"Unknown CO Erway," a prison guard at SCF;

1

"Unknown S. Gibas," a prison guard and correctional officer at SCF;

"Unknown RVO Markel," a prison guard and correctional officer at SCF;

"Unknown Sgt. Ferris," a prison sergeant at SCF;

"Unknown C. Walker," a prison guard and correctional officer at SCF;

CO Osteniout, a correctional officer at SCF;

H.I. Peudetelt, hearings investigator at SCF;

Carl T. McLellan, assistant resident unit manager at SCF;

Lloyd Rapelje, assistant deputy warden at SCF;

"Unknown Walker," resident unit manager at SCF;

"Unknown Supervisor of ARUM McLellan"

CO Gomez, correctional officer at SCF;

"Unknown D. Potila," assistant resident unit manager at SCF;

"Unknown Wirely," sergeant at SCF;

"Unknown Price," or "Prile," sergeant at SCF;

"Unknown Jones," lieutenant at SCF;

"Unknown Zummer," assistant resident unit manager at SCF;

"Unknown CO Shaw M.," correctional officer at SCF;

"Unknown CO Jody Curtis," correctional officer at SCF;

"Unknown Sgt. Koch," sergeant at SCF;

"Unknown CO Owen," correctional officer at SCF;

"Unknown CO M. Smith," correctional officer at SCF;

"Unknown CO Neview," correctional officer at SCF;

"Unknown CO Lucero," correctional officer at SCF;

"Unknown CO Weeks," or "Weels," correctional officer at SCF;

"Unknown (SCF) Inspector," inspector at SCF;

"Unknown Deputy Warden," deputy warden at SCF;

"Unknown Winn," warden at SCF;

Daniel Hayden, MDOC director, Lansing Michigan;

Patricia Caruso, MDOC director, Lansing Michigan; and

Prison Health Services.

Plaintiff's handwritten complaint assembles a variety claims against numerous staff members arising from multiple events that purportedly occurred during the course of his stay at SCF.  As further detailed below, Plaintiff claims that the named defendants violated his federal constitutional rights by (1) failing to protect him from an October 16, 2010 prison assault by fellow inmates, (2) transferring him from a Level IV to Level V prison, (3) fabricating misconducts in retaliation for filing grievances and suppressing and destroying evidence with regard to the misconducts, (4) failing to process various grievances, (5) failing to train and supervise staff members, and (6) failing to provide him with adequate medical care.

### "Food Theft" Misconduct

On February 25, 2010, Plaintiff alleges that defendant Shaw fabricated a major misconduct against Plaintiff relating to theft and possession of certain food items.  Plaintiff alleges that this fabricated misconduct denied him his procedural

due process, substantive due process, equal protection and his right to a fair hearing. (Compl. ¶ 55). On February 26, 2010, Plaintiff alleges that defendant Koch "condoned, [acquiesced, and] actively participated in a conspiracy" with defendant Shaw to deprive Plaintiff of material exculpatory evidence and documents relevant to his misconduct relating to the stolen food. (Compl. ¶ 56). On February 27, 2010, Plaintiff alleges that defendant Peudetelt, "with discriminatory animus, evil motive that was racially motivated in retaliation for lodged grievances" suppressed video, relevant documents and materially exculpatory evidence that deprived plaintiff of his rights to procedural and substantive due process, equal protection, liberty, and his right to a fair hearing. (Compl.¶ 57).

"Interfering with Administrative Rules" Misconduct

Plaintiff alleges that, on March 23, 2010, defendant Owen, in retaliation for something that Plaintiff does not articulate, fabricated a major misconduct against Plaintiff regarding interference with administrative rules, when an unknown corrections officer opened Plaintiff's door to permit him to go to the "prison 1200 yard C&D" to call his family members about a family death and emergency. Plaintiff asserts that the filing of the misconduct deprived him of due process, equal protection, and liberty and was an abuse of governmental power and authority. Plaintiff alleges that defendant Jones "condoned, [acquiesced, and] actively participated in the unconstitutional due process conduct" of Owens. (Compl. ¶¶ 53-54).

4

<u>"Speaker Theft" Misconduct</u>

Plaintiff alleges that, on April 1, 2010, defendant Smith deprived Plaintiff of his due process rights related to the alleged theft of computer speakers, and further deprived Plaintiff of video, documents, procedural and substantive due process, equal protection, liberty, and a fair and impartial hearing.  (Compl. ¶ 49).  On the same date, Plaintiff alleges that defendants Neview and Lucero conspired with defendant Smith "with discriminatory animus, racially motivated to the 'alleged theft, stolen property and misuse of state property' that deprived Plaintiff...of his procedural due process, substantive due process, equal protection, liberty for fair and impartial hearing."  (Compl. ¶ 50).  Plaintiff alleges that, on the same date, "unknown ARUM Buczek," not a named defendant, conspired with his co-workers M. Jannen (also not a named defendant), and defendants Neview, Lucero, and Smith in some way relating to the speaker theft misconduct.  (Compl. ¶ 52). Defendant Price "condoned, [acquiesced], and actively participated" in his subordinates' misconduct.  (Compl. ¶ 51).

<u>"Possession of a Weapon" Misconduct</u>

Plaintiff alleges that on September 16, 2010, "M. Rappley," not a named defendant, retaliated against Plaintiff by fabricating a major misconduct concerning the possession of a weapon in retaliation for Plaintiff's having engaged in protected conduct.  Plaintiff alleges that defendants Weeks and Wirely conspired with Rappley to allege possession of a shank.  (Compl. ¶¶ 47-48).

<u>Failure to Protect from Prison Yard Assault by Fellow Inmates</u>

Plaintiff alleges that, on October 16, 2010, he was assaulted by two fellow inmates, Gomez and Castro.  He alleges that he "engaged in protected right to free speech" and, as a result, he was "directed by unknown CO to go retrieve his lost prison I.D. from 1200 unit yard officers," who "through staff corrupted by CO's Erway and Markel, CO S. Gibas" failed to protect him from an assault by the inmates.  (Compl. ¶ 38).  Plaintiff alleges that defendant Erway failed to protect him from being assaulted and stabbed in the face by two inmates; that defendant Markel conspired with Erway to violate Plaintiff's federal constitutional rights to procedural due process, substantive due process, and equal protection; that defendant Gibas failed to protect Plaintiff from being assaulted; and that defendant Ferris conspired with Erway, Gibas, and Markel to fail to protect Plaintiff from being assaulted.  (Compl. ¶¶ 33-36).  Plaintiff does not set forth any specific facts supporting the assertion that defendants Erway, Markel, Gibas, or Ferris were deliberately indifferent to the risk of harm posed by Gomez and Castro.

Plaintiff further alleges that, on September 24, 2010, defendant McLellan "had 100% knowledge that Plaintiff Ray Michael Morin was going to be attacked and stabbed by unknown prisoners and failed to act," which failure amounted to deliberate indifference.  (Compl. ¶ 39).  Plaintiff does not, however, set forth any facts that support his conclusion regarding McLellan's foreknowledge that Plaintiff was going to be attacked.  Plaintiff alleges that an "RUM unknown supervisor"

6

failed to adequately train or supervise defendant McLellan to protect Plaintiff from being assaulted by Castro and Gomez.  (Compl. ¶ 40).

### Second "Possession of Weapon" Misconduct

Plaintiff alleges that on October 14, 2010, defendant Osteniout fabricated a major misconduct against Plaintiff in retaliation for grievances.  (Compl. ¶ 45). Plaintiff alleges that, on October 16, 2010, defendant Walker conspired with Osteniout "with discriminatory, animus, racially motivated to retaliate against Plaintiff Ray Michael Morin to deprive me of my procedural due process, equal protection, liberty." (Compl. ¶ 46).

Plaintiff alleges that on October 18, 2010, hearing investigator Peudetelt "racially motivated, with discriminatory animus conspired with" defendants Erway, Ferris, Gibas and Markel to suppress exculpatory evidence in a hearing on a major misconduct charge against Plaintiff of possession of a weapon relating to the above-mentioned October 16, 2010 assault.  (Compl. ¶ 37).

### Retaliatory Transfer from Level IV to Level V

Plaintiff alleges that on October 28, 2010, defendant McLellan transferred him from Level IV to Level V prison facility in retaliation for filing grievances. (Compl. ¶ 41).  Plaintiff alleges that on November 1, 2010, defendant Rapelje "condoned, approved and participated in" McLellan's retaliatory transfer of Plaintiff from Level IV to Level V.  (Compl. ¶ 42).  He alleges that an "Unknown (SRF) Classification/Transfer Coordinator," not listed as a defendant, conspired with defendants McLellan and Rapelje, with discriminatory racial motivation, to

7

retaliate against Plaintiff by participating in Plaintiff's transfer from Level IV to Level V.  (Compl. ¶ 43).  He further alleges that defendant Winn conspired with an "unknown deputy warden" and McLellan and Rapelje with discriminatory motive and racial animus in Plaintiff's transfer.  (Compl. ¶ 44).  Plaintiff also alleges that on November 1, 2010, the unknown classifications and transfer coordinator conspired with defendants McLellan and Rapelje "through fraud" to transfer Plaintiff to a Level V prison.  (Compl. ¶ 64).

<u>Failure to Process Grievances</u>

Plaintiff alleges that on December 1, 2009, an unknown grievance coordinator, not listed as a defendant, did not process grievances concerning his transfer.  He further alleges that he requested multiple Step II appeals from the grievance coordinator, but these were never provided.  (Compl. ¶ 67).

On December 11, 2009, Plaintiff alleges that an unknown grievance coordinator would not process two grievances relating to alleged improper transfer or placement screen relating to Plaintiff's placement in Level IV and prison discipline.  Plaintiff alleges that this deprived him of his right to free speech. (Compl. ¶ 58).

On December 24, 2009, Plaintiff alleges that an unknown grievance coordinator would not process his Step II appeal.  (Compl. ¶ 59).

On March 24, 2010, Plaintiff alleges that an unknown grievance coordinator would not process two grievances against various staff members.  (Compl. ¶¶ 60, 67).

On April 12, 2010, Plaintiff alleges that an unknown grievance coordinator would not process two Step II appeals for the grievances lodged on March 24, 2010. (Compl. ¶ 61).

On October 16, 2010, Plaintiff alleges that an unknown grievance coordinator would not process three grievances related to the failure of various defendants to protect him from the October 16, 2010 assault by prison inmates, inhumane prison conditions, and a transfer. (Compl. ¶¶ 62, 67).

On November 2, 2010, Plaintiff alleges that an unknown grievance coordinator would not provide a Step II appeal for the three grievances dated October 16, 2010, through October 21, 2010. (Compl. ¶63).

Plaintiff alleges that on May 28, 2012, an unknown grievance coordinator "never processed several prior grievances dated from 12/11/09 - 5/28/2012 that exceeded 30 pages." (Compl. ¶ 65).

<u>Claims for Relief</u>

Plaintiff asserts twenty four claims for relief.

Plaintiff's first six claims for relief, along with his twenty-first claim, relate to the October 16, 2010 assault by fellow prisoners. Plaintiff claims that defendants Erway, Markel, and Gibas failed to protect him the prison assault by two other inmates in violation of his Eighth amendment right to be free from cruel and unusual punishment. (Compl., Claims I-III, ¶¶ 69-71). He also alleges that three unknown corrections officers failed to protect him the assault. (Compl., Claim XXI, ¶ 89). He asserts that defendants Ferris and unknown correctional officers

9

condoned, acquiesced, and actively participated in their subordinates and co-workers' deliberate indifference. (Compl., Claim IV, ¶ 72). He claims that defendants Erway, Gibas, Markel, and three unknown corrections officers engaged in a racially motivated conspiracy to violate his rights to due process and equal protection. (Compl., Claim V, ¶ 73). He further alleges that defendant Erway acted with malice, intentional willful, wanton and deliberate indifference to unlawful prison conditions, and thereby violated Plaintiff's rights to procedural and substantive due process and equal protection. (Compl., Claim VI, ¶ 74).

Plaintiff's seventh claim for relief is against one or more unknown grievance coordinators who, though not listed as defendants, failed to process Plaintiff's grievances. Plaintiff asserts that the unknown grievance coordinator(s) acted with malice, retaliated against Plaintiff for engaging in free speech, and violated his right to due process. (Compl., Claim VII, ¶ 74).

Plaintiff's eighth claim for relief relates to his placement in a Level V facility. Plaintiff alleges that the unknown classification director, though not listed as a defendant, conspired with the unknown grievance coordinator and defendants McLellan, Erway, Rapelje, and Winn to assign him to the Level V facility in violation in his rights to procedural and substantive due process and equal protection. (Compl., Claim VIII, ¶ 76).

Plaintiff's ninth through eleventh claims for relief appear to relate to the first "possession of a weapon" misconduct. He claims that non-defendant Rappley conspired with defendants Weeks and Wirely in asserting the misconduct, in

10

retaliation for grievances lodged by Plaintiff. He further alleges that Wirely acted with deliberate indifference and condoned and actively participated in the violation of Plaintiff's procedural and substantive due process rights and his right to equal protection. (Compl., Claims IX-XI, ¶¶ 77-79).

Plaintiff's twelfth claim for relief appears to concern the second "possession of a weapon" misconduct. Plaintiff claims that defendant Osteniout conspired with defendant Walker to violate Plaintiff's constitutional rights. (Compl., Claim XII, ¶ 80).

Plaintiff's thirteenth through sixteenth claims for relief appear to concern the "speaker theft" misconduct. Plaintiff asserts that defendant Smith discriminated against him based on race and natural origin and retaliated against him for lodging grievances, in violation of his rights to procedural and substantive due process and equal protection. (Compl., Claim XIII, ¶ 81). Plaintiff also asserts that defendant Neview conspired with defendants Smith and Lucero and non-defendant Buczek to deprive him of his rights to procedural and substantive due process and equal protection. (Compl. Claims XIV-XVI, ¶¶ 82-84).

Plaintiff's seventeenth claim for relief asserts that defendant Owens conspired with defendant R. Jones, in violation of Plaintiff's rights to procedural and substantive due process. (Compl., Claim XVII, ¶ 85). This claim appears to be related to the "interfering with administrative rules" misconduct.

Plaintiff's eighteenth claim for relief also relates to the "speaker theft" misconduct. It asserts that defendant Price condoned, acquiesced, and actively

11

participated in discrimination based on race and national origin and deprived
Plaintiff of due process and equal protection.  (Compl., Claim XVIII, ¶ 86).

Plaintiff's nineteenth claim for relief asserts conspiracy claims against
defendants Michael Shaw and Jody Curtis.  (Compl., Claim XIX, ¶ 87).   This claim
appears to be related to the "food theft" misconduct.

Additionally, Plaintiff complaint includes claims against MDOC directors
Patricia Caruso and Daniel Hayden, an unknown supervisor, unknown nurses and
doctors, and Prison Health Services.  (Compl. Claims XX, XXII-XXIV, ¶¶ 88, 90-92).
These claims summarily assert that the unknown supervisor failed to adequately
train and supervise defendants Erway, Gibas, and unknown correctional officers;
that Caruso and Hayden failed to adequately train their staff; and that the
unknown doctors and nurses and Prison Health Services did not provide Plaintiff
with adequate health care.  There are no factual allegations in the body of the
complaint relating to these claims.

Plaintiff seeks compensatory and punitive damages.  He seeks preliminary
and permanent injunctive relief ordering defendants to stop their discriminatory
practices and to provide him with all relevant documents.  He also seeks a
declaration that defendants' conduct has violated his constitutional rights.

## II.    STANDARD OF REVIEW

Plaintiff has been granted *in forma pauperis* status.  Under the Prison
Litigation Reform Act ("PLRA"), the Court is required to *sua sponte* dismiss an *in
forma pauperis* complaint before service on a defendant if it determines that the

12

action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; 42 U.S.C. § 1997e(c); *see also Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010).  Under the PLRA, the district court is required to dismiss an insufficient complaint without affording the plaintiff leave to amend.  *Bright v. Thompson*, 467 F. App'x 462, 464 (6th Cir. 2012).

To survive screening under the PLRA, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Hill*, 630 F.3d at 471 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While a *pro se* plaintiff is held to a less stringent pleading standard than a party with an attorney, a *pro se* plaintiff is still required to state facts that support the legal conclusions in his civil rights complaint.  *Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008).

### III.   ANALYSIS

Plaintiff is suing the various defendants under 42 U.S.C. § 1983.  To state a claim for relief under Section 1983, a plaintiff must allege that (1) he was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law.  *Flagg Bros. v. Brooks,* 436 U.S. 149, 155-57 (1978).  The Court will review Plaintiff's various claims for conformity with those requirements.

**A.** **Claims that grievance coordinators failed to process grievances.**

Plaintiff claims that one or more unknown grievance coordinators failed to process various grievances filed during his stay at SCF.[1]  This does not state a claim for relief because there is no constitutionally protected due process right to an effective prison grievance procedure.  *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002) (grievance appeal does not implicate the First Amendment right to access courts because there is no constitutional right to an effective prison grievance procedure).  Because an inmate does not have a federal constitutional right to have a prison grievance acted upon, an official's alleged failure to process an inmate's grievances, without more, is not actionable under Section 1983.  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).  The claims against the unknown grievance coordinator(s) will be dismissed.

**B.** **Claims alleging filing of false misconducts.**

Plaintiff claims that various defendants fabricated and filed false misconduct charges against him.  He also asserts that the defendants filed these misconduct charges in retaliation for various grievances Plaintiff had filed.  Finally, he asserts that various defendants conspired to destroy and suppress evidence in relation to these misconducts.  Plaintiff's allegations do not state a claim for relief and will be dismissed.

---

[1] The Court notes that although Plaintiff's seventh claim is against a certain "unknown grievance coordinator," Plaintiff fails to name the unknown grievance coordinator as a defendant in this action.

1)    *Filing false misconducts*

A prisoner has no constitutionally protected immunity from being falsely accused. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). The prisoner only has a right to due process of law in the disciplinary proceedings. *Id.* False accusations of misconduct filed against an inmate do not constitute a deprivation of that inmate's constitutional rights when the charges are adjudicated in a fair hearing. *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004). Plaintiff's complaint does not allege that there was no disciplinary hearing held on the misconduct incident, or that the hearing failed to comport with the due process standards that were announced in *Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974), and *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 455-56 (1985). The mere filing of allegedly false misconducts does not state a claim for relief. *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005).

2)    *Retaliatory false misconducts*

To the extent that Plaintiff claims that defendants filed false misconduct charges in retaliation for his filing grievances, the complaint also fails to state a claim for relief. A prisoner's claim that prison officials retaliated against him for engaging in protected conduct is grounded in the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). A retaliation claim has three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from

15

continuing to engage in that conduct; and (3) the adverse action was motivated, at least in part, by the plaintiff's protected conduct. *Id.* at 394.

The complaint alleges facts in support of the first two elements of a retaliation claim, but fails to allege facts in support of the third element. As to the first element, that the plaintiff engaged in protected conduct, the complaint alleges that Plaintiff filed grievances, which conduct has been held to be protected by the First Amendment. *See Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (allegation that plaintiff filed grievances against prison staff suffices to meet plaintiff's burden of showing first element of retaliation claim for purposes of PLRA screening); *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007). The complaint also sufficiently alleges the second element of a retaliation claim, that the defendants took an adverse action, because it alleges that defendants filed false misconduct charges against the Plaintiff. *See Thomas*, 481 F.3d at 441 (allegation that defendant filed false misconduct charge satisfies second element of retaliation claim); *Scott v. Stone*, 254 F. App'x 469, 472 (6th Cir. 2007).

Plaintiff's retaliation claim fails, however, to adequately allege facts in support of the third element of a retaliation claim, that the exercise of the protected right was a substantial or motivating factor in the alleged retaliatory conduct. "Conclusory allegations of retaliatory motive 'with no concrete and relevant particulars' fail to raise a genuine issue of fact for trial." *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (citations omitted). "Bare allegations of malice do not suffice to establish a constitutional claim." *Jackson v. Madery*, 158 F. App'x

16

656, 663 (6th Cir. 2005). Plaintiff here "merely alleges the ultimate fact of retaliation." *Murray*, 84 F. App'x at 556. He does not provide facts that would support an inference that the misconducts were fabricated in retaliation for his grievance filing. Without facts to support his claim of retaliatory motive, his bare allegation of retaliation is insufficient to support a first amendment retaliation claim. *Id.*; *compare Patterson v. Godward*, 370 F. App'x 608, 610 (6th Cir. 2010) (retaliation claim sufficient where plaintiff alleged not only temporal proximity but also specific statements by defendants showing motive) *with Murray*, 84 F. App'x at 556 (complaint subject to summary dismissal where plaintiff alleged only ultimate fact of retaliation without supporting facts). Because Plaintiff fails to offer any facts that would permit a fact-finder to infer that the misconducts were motivated by his previous grievances, his retaliation claim fails to state a claim for relief.

3)   *Claims alleging suppression and destruction of evidence relating to Misconducts*

Plaintiff claims at various points in his complaint that defendants suppressed evidence relating to the misconducts he received while at Saginaw. *See, e.g.*, Compl. ¶ 37 (alleging that hearing officer Peudetelt conspired with corrections officers Erway, Ferris, Gibas and Markel to "suppress material exculpatory evidence, material documents and video" relating to the second possession of a weapon misconduct); Compl. ¶ 56 (defendant Koch conspired with defendant Shaw "to deprive Plaintiff ... of material exculpatory evidence [and] documents" relevant to the food theft misconduct); Compl. ¶ 57 (hearing investigator Peudetelt "with discriminatory, animus, evil motive that was racially motivated in retaliation for

lodged grievances...suppressed video, relevant documents [and] material exculpatory evidence" in the food theft misconduct). While a claim that evidence was improperly suppressed could state a due process claim, Plaintiff's complaint provides no specific facts in support of his contention that there was evidence, that it was material, or that it was suppressed.[2] When a *pro se* plaintiff merely asserts legal conclusions without providing facts to support his claim, he fails to state a claim for relief. *Grinter,* 532 F.3d at 577 (citing *Kamppi v. Ghee,* 208 F.3d 213 (table), 2000 WL 303018 at *1 (6th Cir. 2000) ("the less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations")).

## C.   Claims relating to security classification and prison level.

Plaintiff claims that various defendants conspired to assign him to a Level V facility rather than a Level IV facility, and that this violated his rights to procedural and substantive due process and equal protection. These claims based on his security classification fail to state a claim for relief under Section 1983.

Given a valid conviction, a state prisoner "has been constitutionally deprived of his liberty," and therefore the state may "confine him and subject him to the rules

---

[2] At best, the brief attached to Plaintiff's complaint states, in part, "'However' the hearings excluding of all relevant documents, (2) material witnesses, (3) video and the intentional exclusion of such caused substantive 'prejudice' to the Plaintiff, resulting in a civil right violations and due process," and "the institutional video contains material exculpatory evidence that was 'suppressed by prison officials' that prejudice me." Pl. Br., p. 7. Even if the Court were to consider the brief as part of the complaint, interpret those statements as "facts," and view them in the light most favorable to him, Plaintiff has still failed to allege an actionable violation of this due process because prisoners do not have an absolute right to present evidence in their defense. *Wolff,* 418 U.S. at 566 (holding that the right to present evidence may be limited where it would be "unduly hazardous to institutional safety or correctional goals"). Even if there was a video and it was suppressed, Plaintiff may have still received due process—Plaintiff merely alleges that the video itself was suppressed, not that the hearing officer misrepresented the contents of the video or refused to consider the purported evidence in its entirety.

of its prison system so long as the conditions of his confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).   The United States Supreme Court has held that the transfer of a state prisoner from a medium to a maximum security prison does not infringe any "liberty interest" of the prisoner within the meaning of the due process clause.  *Id.* at 224-25.  Moreover, Plaintiff's complaint does not allege that the nature of his confinement within the Level V prison "imposes atypical and significant hardship on [Plaintiff] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472; 484-87 (1995); *see also Wilkinson v. Austin,* 545 U.S. 209, 223-24 (2005).   Therefore, Plaintiff's claim that defendants violated his federal constitutional rights by classifying and transferring him to a Level V prison rather than a Level IV facility fails to state a claim upon which relief may be granted.

**D.    Claims related to failure to prevent prison assault.**

The Eighth Amendment to the United States Constitution requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)).  However, not "every injury suffered by one prisoner at the hands of another... translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.  To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that another prisoner would cause the plaintiff serious harm.  *Id.* at

834. Although Plaintiff alleges that the defendants were "deliberately indifferent" to his assault, he fails to set forth any facts showing that the defendants had any reason to know that Castro and Gomez presented a threat to Plaintiff's safety. While the complaint asserts that defendant McLellan "had 100% knowledge" that unknown prisoners were going to assault Plaintiff, the complaint does not state how McLellan knew this, or what basis the Plaintiff has for making this assertion. *Cf. Iqbal*, 556 U.S. at 680-83 (allegations that defendants "knew of, condoned, and willfully and maliciously agreed" to subject plaintiff to harsh conditions of confinement insufficient to plausibly suggest discriminatory state of mind). Plaintiff's failure to protect claims fail to state a claim for relief.

Plaintiff's conspiracy claims also fail to state a claim for relief. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000). In order to state a claim sufficient to survive screening, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, n.3 (2007); *see also Iqbal*, 556 U.S. at 678 (the court need not accept threadbare recitals of the elements of a cause of action supported by conclusory statements); *Hill*, 630 F.3d at 471. A sufficient claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where the pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint fails to state a claim for relief. *Id.* at 679. In the context of an illegal

20

conspiracy, a sufficient complaint must contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Conspiracy claims must be pled with specificity, and vague and conclusory allegations unsupported by facts are insufficient to state a conspiracy claim. *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)). Plaintiff's conspiracy claims against defendants fail because Plaintiff offers no facts in support of his assertion that defendants conspired against him. The conspiracy claims are therefore subject to dismissal under 28 U.S.C. §§1915(e)(2) and 1915A(b). *See Scott v. Norton*, 96 F. App'x 378, 380 (6th Cir. 2004) (affirming summary dismissal of prisoner civil rights complaint where plaintiff offered no factual support or evidence of conspiracy).

**E.      Claims related to failure to supervise and train.**

Plaintiff's failure to train and failure to supervise claims also fail. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *See Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Social Services.*, 436 U.S. 658, 691 (1978). A supervisor is not liable for failing to train unless he either encouraged the specific incident of misconduct or otherwise directly participated in it. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (other citation omitted)). Here, the complaint

21

merely asserts conclusorily that various supervisors knew of, condoned or acquiesced in other officers' unconstitutional conduct or failed to train or supervise those officers. Such allegations, without supporting facts, are insufficient to establish liability on the part of supervisors.

## F.    Equal protection claims.

Plaintiff claims that the defendants discriminated against him on the basis of race or violated his right to equal protection. *See, e.g.*, Compl. ¶¶ 37, 42, 43, 44, 46. Plaintiff, however, presents no facts in support of these bare claims of discrimination. Claims of discrimination based on race and denial of equal protection, without facts supporting such claims, are subject to summary dismissal. *Grinter*, 532 F.3d at 577.

## G.    Claim against Prison Heath Services.

Plaintiff's twenty-second claim for relief asserts that Prison Health Services, along with Correctional Medical Services and various unnamed, non-defendant, doctors and nurses, failed to provide adequate medical care. Plaintiff does not provide any additional facts regarding this failure to provide adequate medical care. These bare allegations fail to state a claim for relief against Prison Health Services. *See Iqbal*, 556 U.S. at 678 (the court need not accept threadbare recitals of the elements of a cause of action supported by conclusory statements). Plaintiff's claims against Prison Health Services will be dismissed.

**H.    Claim against Caruso, Hayden, and Unknown Supervisor.**

Plaintiff's twentieth, twenty-third and twenty-fourth claims for relief allege that MDOC directors Patricia Caruso and Daniel Hayden and an unknown supervisor failed to adequately train and supervise prison staffers, resulting in violations of Plaintiff's constitutional rights.  Again, these are bare allegations that are unsupported with any factual support.  Plaintiff's twentieth, twenty-third and twenty-fourth claims for relief will be dismissed.

## IV.    CONCLUSION

For the reasons stated, the Court concludes that Plaintiff has failed to state a claim upon which relief may be granted as to any defendant.  Accordingly, the Court **DISMISSES** the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and 42 U.S.C. § 1997e(c).  The Court also concludes that an appeal from this order would be frivolous and cannot be taken in good faith.  *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997) (overruled on other grounds by *Jones v. Bock,* 549 U.S. 199 (2007)).

**SO ORDERED**.

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  May 3, 2013

### Certificate of Service

I hereby certify that this Order was electronically submitted on May 3, 2013, using the CM/ECF system, which will send notification to all parties.

s/A. Chubb
Case Manager

23